## N. Y. COMMON PLEAS.

FRANCIS C. UPTON and JOSEPH H. TITUS, plaintiffs and respondents, agt. EDWARD A. BEDLOW, defendant and appellant.

Where a question of *fraud* or *misrepresentation* arises upon the issues on the trial of a cause, the court has no right to withhold such question from the jury and to decide it, where either party apply to have the question submitted to the jury.

*Before* DALY, *Ch. J.*, LARREMORE *and* J. F. DALY, *JJ*.

APPEAL from judgment of this court, in favor of plaintiffs, upon verdict found under the direction of the court.

WM. WATSON, *for appellant.*

The plaintiffs sought in this action to recover $2,842 for moneys advanced defendant, and alleged that they had accounted together.

The defendant in his answer denied that plaintiffs advanced the money as stated, and any indebtedness whatever, and averred, that his admission of the account was procured by misrepresentation and fraud.

And as counterclaims defendant alleged, that plaintiffs in consideration of $4,000 paid to them, had agreed to hold certain Wyoming Valley stock for defendant's benefit, and that in violation of this agreement plaintiffs sold said stock without notice, whereby defendant had sustained a loss of $4,000.

These issues were tried before Judge BRADY and a jury. The plaintiff's counsel to maintain the issue on their part called Francis C. Upton, one of the plaintiffs, as witness.

The witness produced an account, and proved the defendant's admission thereof, in these words. "The above is a correct account, and due by me to U. & T." On cross-examination the witness was asked to produce his books; he admitted that he was served with subpœna to produce them, but stated he had left them in court last fall, and had not seen them since. The court adjourned in order that search might be made for the books. They were not found, and the judge assumed, that they had been sold for waste paper. The witness was then asked, if he had not been examined before trial? A. Yes. Q. Did he not state on such examination, that there was no check in his check-book for Manley & Co.? It was admitted by his counsel, that he had so stated. He did not deny this statement. It appeared, that both plaintiffs' and defendant's counsel had taken notes of the examination. Defendant's counsel produced his minutes of examination as a witness. It appeared from them, that plaintiffs had but 400 shares of stock, and that they had sold 400 shares in April for about the original cost. Manley & Co. testified, they had no recollection of selling any stock to plaintiffs. Plaintiffs did not deny they paid for stock they bought by checks, and that no mention was made of any check to Manley & Co. on their check-book.

Neither the plaintiffs, both of whom were present, nor their counsel offered their evidence to impeach the minutes of defendant's counsel, or to show they made the payment charged in the account of Manley & Co.

The judge refused to submit the case to the jury. He refused to charge as requested by defendant's counsel, as to the counterclaims, and in other respects, saying he had passed rapidly on the question, and parties could have relief at general term.

Proper exceptions were taken to all these rulings.

I. The learned judge erred in refusing to charge, as requested by defendant, and in taking the case from the jury.

The evidence of Manley, that he had no recollection of

having sold Wyoming Valley stock to plaintiffs, or of ever dealing in the stock—the evidence of the plaintiff, Titus shows, that there was no entry in plaintiff's check-book of any check to Manley & Co., (the defendant being charged in the account with $5,206 paid to Manley & Co.) though plaintiffs usually paid for stocks by check—the suspicious disappearance of the plaintiff's books, which they said were of great value, and yet, suffered to remain without inquiry, for so long a time in the custody of no one, and the failure of either plaintiff on cross-examination to state that any such sum had been paid to Manley & Co., were evidence which should have been submitted to the jury, as to whether the payment of $5,206 to Manley & Co., was not an error or misrepresentation in the account.

In *Lockwood* agt. *Thorne* (18 *N. Y.*, 290, 291, 292), the balance had not only been struck but paid. In an action to recover back a portion of the sum paid, SELDEN, J., "there is a misapprehension existing as to the effect of what is called an account stated. An account stated or settled is a mere admission, that the account is correct. It is not an estoppel. The account is still open to impeachment for mistakes or errors—no preliminary issue, as to whether it shall be opened, is required."

II. The minutes of plaintiff's examination before trial taken by defendant's counsel with his evidence that it was correct, were conclusive evidence, that plaintiffs held no stock for Bedlow, and had sold all the Wyoming stock they held by the 2d of April, for about its original cost.

Neither the plaintiffs who were present, nor their counsel who took notes, were able to contradict the truth of the minutes as taken by defendant's counsel. It was plain from the evidence, that when the stock fell in the market, plaintiffs exacted margin under pretext of holding stock when they held none.

This evidence sustained the defense, to wit: that plaintiffs pretended to be carrying stock for defendant, when in fact,

they had long since parted with it and for its original cost (*Halsey* agt. *Linsibaugh,* 15 *N. Y.,* 488).

III. The learned judge erred in refusing defendant's request to charge, that if the jury believed this stock was sold in violation of an agreement with defendant not to sell until December, the defendant was entitled to recover the difference under his counterclaims.

(*a.*) Defendant had paid $2,000 in March, and $2,000 in May, to plaintiffs for carrying this stock. The learned judge ruled, that the promise to carry until December, being made after these payments, was without consideration and for that reason refused to charge as requested. But not only was plaintiffs bound in law to carry the stock (*Markham* agt. *Jaudon,* 2 *Hand,* 235), but the consideration, though passed and executed, arose at the instance and request of plaintiffs, and was so laid in the counterclaims.

It is well settled, that if the consideration be wholly past and executed before the promise be made, it is, nevertheless, sufficient if it arose at the request or instance of the party promising, or the promise is supported by some legal or moral obligation. In the case at bar, plaintiffs were bound in law not to sell without notice—that is, were bound to carry the stock until they gave notice of sale, which notice they failed to give. The two payments of $2,000 in March and in May, were consideration sufficient to uphold the promise laid in the first counterclaim, not to sell without notice; and also that in the second, not to sell until December—though the latter was not made until the consideration was executed and byegone (*Comstock* agt. *Smith,* 7 *Johns.,* 87; *Livingston,* agt. *Rogers,* 1 *Caine's R.,* 585; 1 *Sand. R.,* 264, *and cases there collected;* 1 *McCord,* 514; 1 *Barn. & Ald.,* 104).

IV. The judgment should be reversed, and new trial ordered.

The plaintiff's counsel cited no authorities, but insisted, that the account as admitted by defendant was conclusive,

and had not been impeached in such way as to present any 'fact for the jury.

C. B. STOUGHTON, *for respondents.*

This suit was brought to recover from the defendant the sum of $2,842 03, due by him to the plaintiffs upon certain stock transactions.

The complaint alleges the paying out of large sums of money by the plaintiffs at the request of the defendant, and that thereafter the plaintiffs and the defendant accounted together, and that upon that accounting a balance of $2,-842 03 was found to be due from the defendant to the plaintiffs; that the defendant promised to pay said sum, but had never done so.

The answer contains :

A general denial.

An allegation that one James Meyer is a necessary party defendant.

Two counterclaims.

The reply denies all of the allegations in the answer, and it is insisted, that the accounting is conclusive upon the defendant.

The plaintiffs, to prove this case, called Francis C. Upton, who testified, that an accounting was had between the plaintiffs and defendant, which the defendant acknowledged, in writing, to be correct, and the original account signed by the plaintiffs and defendant was read in evidence.

At this point the defendant's counsel undertook to cross-examine Upton, and to impeach the account, and in order to do so he moved to amend his answer, which was permitted. In this amendment to his answer, the defendant admits, that the whole answer as it stood, was false.

That is to say.

He avers he admitted the account, &c., when in his former answer he denies its existence.

That the plaintiffs never bought or sold the stock, nor paid out any money, when, in his former answer, he alleges, that plaintiffs bought the stock and held it as his agents, and sold it on the 12th and 18th days of October, and in his testimony, he admits signing the account, and admits that it was correct. He says he knows they bought the stock; "no, I do not; I only know that he" (Meyer) "requested them to buy it, and they did." He says, he knows they sold it.

In the autumn previous to the trial of this cause, the defendant had procured an order for the examination of both of the plaintiffs before trial, upon which examination plaintiffs' books were produced, and they were examined fully by defendant's counsel, who never had the testimony signed, nor did he file it with the court, nor did he produce anything but his minutes, which he admitted might not contain all of the testimony of the witnesses, which alone would deprive him of the right to read them.

The plaintiffs' books were left by plaintiffs' counsel in charge of an officer of the court for over a year, and lost.

Defendants' testimony wholly fails to put at issue and question of fact, and his admission of the account is conclusive against him. No fraud is shown to have been perpetrated by the plaintiffs, nor can there be any presumption of it from any evidence produced; on the other hand, they offered the defendant his stock after they had sold it, if he would pay them the price they would receive for it, and he refused to take it, but expressed himself entirely satisfied with the transaction, and said: "there was no use taking the stock. I would settle it as it was."

I. The learned judge was right in taking the cause from the jury, and in refusing to charge as requested by defendant's counsel.

The evidence of Manley was simply that he did not recollect the transactions in Wyoming Valley coal stock.

He does not say he had none. Defendant had the account,

which has every transaction stated upon it, and the names of the parties with whom they were made. To impeach that account, the defendant had but one thing to do, which was to subpœna the parties, with their books. If the accounts had been wrong, the books of those parties would have shown it. Instead of this, they subpœnaed Manley, without his books, and asked him to recollect a transaction which occurred over four years prior to his examination, which he could not do, and offer no other evidence in regard to it.

II. The account is an estoppel. It was stated and signed by both parties, and if it were not an estoppel, the occurrences which took place after the accounting were sufficient to make it so, viz. :

Plaintiffs offered defendant his stock back after it was sold, and defendant refused to take it, but wished to "settle it as it was."

III. The defendant's testimony cannot have any weight in his favor. His answer contradicts itself four times, and his testimony is contradictory in nearly every sentence. The court is respectfully requested to read the answer. The amendment to answer. The reason why he swore to amendment to answer.

"Re-direct by Mr. Watson."

"Q. When you swore to the answer—I mean the counterclaim—you believed that they held that stock. Now, why did you change your opinion as to their holding that stock ?"

"A. Because, in the preliminary examination, their books had been examined, and you stated there was not stock there."

"Q. And that is the reason you changed your opinion ?"
A. "Yes."

And the especial attention of the court is called to the entire testimony of the defendant throughout.

IV. There was no promise on the part of the plaintiffs to hold the stock until December.

The allegations, in answer of promise to hold stock until

December, and of $2,000 paid on account of it, are contradicted by defendant, and there is no other allegation of any promise to hold the stock.

The defendant, testifying that the $2,000 paid in March and that paid in May, were on account of margin, and not upon any promise whatever, and there was no other sum paid whatever. The answer avers, that on the 13th day of October, 1864, plaintiffs agreed, in consideration of $2,000, to hold the stock until December. At bottom of page 25, defendant himself testifies, that he did not pay any money in October, and the account shows that the stock was sold—100 shares—on the 12th October, 1864, which was the day before the alleged agreement to hold it, and it could not have been held after it was sold.

V. The agreement (even if it had been made) to hold the stock until December, would not have been binding upon the plaintiffs, for the following reasons, viz.:

1. The agreement was not founded upon any consideration, and no consideration was paid (*Judge* BRADY).

2. The agreement was not made until a long time after the purchase of the stock, and there was no agreement originally.

3. The defendant ratified and expressed himself satisfied with the sale, and agreed to "settle it as it was."

VI. There was no evidence offered which even tended to show fraud in the account, or misrepresentation on the part of the plaintiffs.

The only evidence offered on this subject was, that of Washington Manley, who simply says, he does not recollect that, four years previous to his examination, he, or the firm of Manley & Co., had any transaction in Wyoming Valley coal stock. He does not say they had none, and he had partners at the time of the transaction, neither of whom were called.

VII. The minutes of defendant's counsel taken upon the examination of plaintiffs before trial, were not admissible as

evidence as they did not contain all the testimony of the witnesses, and was valueless as evidence. So ruled by the learned judge, and no exception taken to such ruling.

VIII. Meyer is not a necessary party, and had no interest in the suit (defendant's own testimony).

IX. The learned judge was right in taking the cause from the jury, as there was no evidence tending to show fraud on the part of the plaintiffs, and the account is conclusive; hence the judgment should be affirmed, with costs.

*By the court*, JOSEPH F. DALY, J.—It seems, upon reading the evidence in the case, that there was ground for the defendant's request to submit the question of misrepresentation to the jury.

The disappearance of plaintiff's books, from which alone the truth or falsity of the plaintiff's representations, that the account presented to and signed by defendant, could be shown, was a suspicious circumstance. The books belonged to plaintiffs, were brought to court by them—were delivered into the custody of the court, and should have been most carefully guarded by the plaintiffs.

The evidence of Mr. Watson was uncontradicted as to what the plaintiff, Titus, swore on the preliminary examination his books showed, and that statement of Titus contradicted the account.

Whatever inferences were to be drawn from these facts, might be drawn by the court, unless the defendant required the jury to do it.

He did make the request, and the court should have left it to the jury (*Lockwood* agt. *Thorne*, 18 *N. Y.*, 291).

Under the ruling in *Markham* agt. *Jaudon*, (41 *N. Y.*, 235), the plaintiffs could not sell the defendant short without giving him notice, and were liable to him for a conversion.

If the agreement signed by the defendant at the foot of the account or settlement be urged as a settlement or waiver of the claim he then had for such conversion, it was without consideration.

It seems to me, that the judgment should be reversed, and a new trial ordered.

Judgment reversed, and new trial ordered.

I think, the question involved in this case, should have been submitted to the jury.   LARREMORE, J.

And I am of the same opinion. DALY, Ch. J.